DOMENGEAUX, Judge.
This appeal concerns itself with a claim under our Workmen’s Compensation Law wherein plaintiff, Benoit Schexnaydre, seeks weekly benefits for total and permanent disability, penalties and attorney’s fees. Plaintiff was injured on March 25, 1965 at Gramercy, Louisiana, while in the course and scope of his employment with defendant, Wallace Industrial Contractors, as a pipe fitter-welder when he was struck by a rolling segment of pipe and thrown forward, causing certain injuries including a laceration on the left forehead. His complaints initially were pains in the head, neck, left arm and left wrist.
Plaintiff’s earnings were such at the time of the aforementioned accident as to place him in the $35.00 per week category of compensation payments.
He was paid weekly benefits from March 25, 1965 through May 6, 1965 by defendant, Trinity Universal Insurance Company, the compensation insurer of the employer, and, additionally, all medical bills resulting from the accident which were presented to defendant insurer were paid as of the latter date.
*758 Plaintiffs returned to work in his former occupation on a full time basis with another employer on June 1, 1965 and worked continuously as such for various employers through and including the time of trial except for a few specified intervals when he received a cut on the lip, had dental trouble, and was laid off, all incidences, of course, being disassociated with the accident which we are concerned with in this case.
The trial of plaintiff’s .case was commenced on October 21, 1965 and inasmuch as same was not completed, it was continued to November 28, 1965 at which time it was concluded.
The trial judge, in his succinct, well-reasoned judgment, awarded plaintiff compensation at the rate of $35.00 per week from May 6, 1965 (the date when defendant-insurer terminated compensation payments) to June 1, 1965 with the usual interest provisions, all medical expenses incurred and for all costs including the assessment of expert medical fees. He found no evidence to support plaintiff’s contention that the insurer acted unreasonably, capriciously or arbitrarily and consequently denied penalties and attorney’s fees.
Plaintiff has appealed to this court specifying that the lower court erred in failing to award him benefits for total permanent or partial permanent disability and further in not finding that the defendant acted arbitrarily and capriciously in terminating compensation and failing to pay certain medicals and denying penalties and attorney’s fees.
Defendants answered the appeal, agreeing with the trial court, except insofar as it awarded additional compensation to plaintiff from May 6, 1965 to June 1, 1965, together with additional medical expenses, costs and expert fees.
After the initial recovery period following the accident, during which time plaintiff suffered generalized pains and experienced disability, he continued to complain of headaches which he states have persisted through the aforementioned trial dates and which he alleges were the result of the accident of March 25, 1965. He suggests that the trial court erred in not finding a conflict in the testimony of the medical experts and should have considered the lay testimony.
We find that the analysis of the trial judge concerning plaintiff’s injuries and the medical conclusions reached from the evidence are correctly stated and we quote from his reasons, as follows:
“The record shows that plaintiff sustained a blow and a cut to the left side of his forehead during the course and scope of his employment with Wallace Industrial Contractors on March 25, 1965. Following emergency treatment at the St. James Parish Hospital in Lutcher, Louisiana, he was referred to Dr. Claude Craig-head, surgeon, of New Orleans. He had a cut about one and one-half inches long through the skin of the forehead. Dr. Craighead saw plaintiff on the same day of the accident. He administered diathermy and traction to plaintiff’s neck on or about April 19, 1965, prescribed medication for complaints of dizziness. On March 25, 1965, he found patient’s condition ‘good’, ‘moderately clear’ and did not recall haziness or amensia. He resorted to traction for plaintiff’s neck about eight (8) times for fifteen (15) minutes each, the last treatment being April 26, 1965. On May 6 plaintiff still complained but refused neurological follow-up. No objective symptoms could be detected on that date or on May 25. He further testified plaintiff’s complaints were purely subjective and thus difficult to evaluate. He observed that Mr. Schexnaydre’s condition improved progressively. The medical report of Dr. Irving Redler, orthopedic surgeon, ruled out evidence of residual disability. Dr. Richard Levy, neuro-surgeon, testified plaintiff could have sustained a mild concussion. He examined plaintiff six months following the accident and could not relate complaints of headaches to *759 a mild concussion or find remaining disability. The testimony of neither Dr. Unkauf nor Dr. Fauble add much to the medical picture.
“Mr. Schexnaydre returned to his usual occupation by June 1, 1965. Despite his alleged complaints that he still experienced pain after resuming his usual work, the medical evidence finds no foundation for such complaints. Plaintiff has failed to establish with sufficient degree of probability that he has been left with residuals from the accident. Joseph v. Aetna Ins. Co., [La.App.] 183 So.2d 762; Diggs v. The Wertz Company et al, [La. App.] 176 So.2d 700.”
We are convinced from an exhaustive review of the medical testimony that the trial judge was correct in finding that no conflict exists therein. To supplement and bolster the trial judge’s conclusions, we find that none of the medics could detect objective symptoms which might produce the pain of which plaintiff complained. Dr. Levy testified that the headaches of which plaintiff complained could not have lasted more than three months from the time of the injury. He based this opinion on the results of a complete neurological examination which he conducted on plaintiff on October 24, 1965. His testimony in this regard was uncontra-dicted by that of the other physicians. Dr. Thomas G. Fauble, who examined plaintiff only once, and then on the date of the accident, and who subsequently moved to the State of California, testified via deposition, and stated that the duration of headaches depends to a great extent on the individual involved. He did not have his records before him at the deposition and was testifying from memory. His conclusions were largely based on hypothets not coincident with the facts of this case. His testimony is of little help in evaluating plaintiff’s present complaints. Dr. Craighead, who was plaintiff’s regular physician for at least eleven years and treated him from March 25, 1965 to May 6, 1965, testified that Schexnaydre had no objective symptoms as of May 6, 1965. Dr. Byron M. Unkauf, an orthopedic surgeon testified that he recommended to plaintiff that he continue with the type of work he was doing. Dr. Irving Redler, another orthopedic surgeon, whose medical report was admitted in evidence by stipulation, stated that plaintiff’s complaints could not be explained on an orthopedic basis.
From our reading of the record we are unable to discern the conflict in the medical testimony which plaintiff asserts. Our law is well settled that in the absence of irreconcilable conflict in the testimony of medical experts we may not consider lay testimony in a workmen’s compensation proceeding. Diggs v. The Weitz Company, La.App., 176 So.2d 700; Butler v. American Insurance Company, La.App., 138 So.2d 862; Ramsey v. Murphy, La.App., 77 So.2d 62; Waldrup v. Consolidated Underwriters, La.App., 64 So.2d 468; Carter v. Consolidated Underwriters, La.App., 62 So.2d 682. We, therefore, find that the trial court did not err in disregarding the lay testimony in this case.
Counsel for plaintiff cites the case of Blanchard v. Travelers Insurance Company, La.App., 121 So.2d 515, for the proposition that when there exists no medical explanation for an affliction found to exist in a workmen’s compensation claimant after the accident, which did not exist prior to the accident, the claimant should be awarded benefits. That case is clearly distinguishable from the instant case. In the Blanchard case the symptom involved was objective and measurable, i. e., hypertension. In the case at bar the symptom claimed is subjective and unmeasurable, i. e., headaches. (Although plaintiff complained of pains in other portions of his body, these were not mentioned in the appellate briefs of counsel and, in any event, these too are purely subjective and should be considered in the same light and manner as was done on the headache complaint).
Plaintiff’s learned counsel also cites the case of Vega v. Higgins Industries, 23 *760 So.2d 661; LSA-R.S. 23:1317; and the Treatise of Wex S. Malone, Louisiana Workmen’s Compensation Law and Practice, § 286, page 370, all to the effect that where the medical evidence clearly preponderates in favor of plaintiff’s contentions, he should be awarded compensation although no objective symptoms can be found at the time of trial. We cannot find that the weight of the medical evidence clearly, or even vaguely, preponderates in favor of Mr. Schexnaydre’s contentions. These citations are, therefore, inapplicable to this case. Ergo we must conclude that the trial court was justified in terminating plaintiff’s compensation benefits on June 1, 1965. It was on that date that plaintiff returned to his former occupation on a full time basis, and this fact, together with the medical evidence adduced, demonstrated to the satisfaction of the trial judge, as well as to this court, that as of June 1, 1965 he was no longer disabled. Nor, in the light of the foregoing, do we see manifest error in the lower court’s decision that compensation benefits were due until June 1, 1965.
We turn now to plaintiff’s second specification of error, i. e., that the lower court erred in not finding that the defendant acted arbitrarily and capriciously in terminating plaintiff’s compensation on May 6, 1965 and failing to pay certain medicals and should therefore be held liable for penalties and attorney’s fees under LSA-R.S. 22:658.
The uncontroverted testimony of Thomas B. Murphy, adjuster for the defendant insurance company, is that on or about May 6, 1965 he spoke to plaintiff’s treating physician, Dr. Craighead, and was told by him that he had not seen plaintiff in some time and presumed him to be cured. Mr. Murphy also testified that he on two occasions sent plaintiff speed letters requesting that plaintiff contact him in reference to his claim. Neither of these were answered by Mr. Schexnaydre, although he admits receiving one letter and does not deny that he may have received the other. In view of this evidence and an absence of anything to the contrary, we cannot say that the defendant insurance company acted in a capricious or arbitrary manner when it terminated the payments to plaintiff. Nor does the record show any capricious or arbitrary refusal to pay medical bills on defendant’s part. Therefore, the trial court properly denied the penalties and attorney’s fees demanded by plaintiff.
For the foregoing reasons we find no manifest error in the judgment of the trial court and the same should be and is hereby affirmed, at defendant’s cost.
Affirmed.