GLADNEY, Judge.
Melvin E. Dunn, an employee of the Tremont Lumber Company, instituted this suit for permanent and total disability benefits under the Workmen’s Compensation Act as a result of an employment injury on June 4, 1962. Plaintiff was working in defendant’s sawmill in Winn Parish when he received a blow from a metal shaft and sustained an injury to his back. Ensuing disability resulted in the payment of workmen’s compensation from the date of injury until January 3, 1963. Through answer, disability beyond January 3, 1963 has been denied by the employer. After trial, judgment was rendered in favor of the defendant rejecting the demands of plaintiff, the-trial judge holding that plaintiff had not: shown the proof necessary to establish his. claim. From the decree plaintiff has appealed.
The principal problem presented by the-appeal is to determine the duration of plaintiff’s disability, that is, whether or not it continued beyond the period for which compensation was paid.
The facts of the case indicate that, following the accident, the plaintiff returned' to work the next morning but left and went to see a chiropractor. Upon complaint to-the company, he was then referred to Dr_ James Lashley, who was at that time an associate in the Winnfield General Hospital but who has since left Winnfield. His testimony was not adduced for the record. After Dr. Lashley’s departure, which was shortly after the accident, Dr. John T. Mosley took over the treatment of the plaintiff. He placed plaintiff in the hospital and thereafter administered to him from June 27 to August 20, 1962. On the basis of the plaintiff’s continued complaints, Dr. Mosley referred the patient to Dr. T. W. Meriwether,, an orthopedic surgeon, who rendered professional services until December 18, 1962,. his findings on that date being completely *921 negative plaintiff was advised to return to his normal job activities. The employee then returned to work on January 3, and worked approximately one week when he left his employment stating he was unable to continue with his work.
The medical evidence relating to the employee’s injury includes the testimony and reports of five doctors: two orthopedists, two specialists in neurosurgery, and the treating physician, a general practitioner. The disability of which the plaintiff complained was uniformly diagnosed as a lum-bosacral sprain, an injury which falls within the special field of the orthopedic specialist.
The treating physician Dr. John T. Mosley, hospitalized the employee for approximately a week following the accident and treated him until August 20, 1962. As of the latter date, Dr. Mosley considered the employee was disabled from performing manual labor “from a subjective standpoint only” and was of the opinion that the employee had sustained a muscle sprain which should be completely healed within two or three months. When, however, the employee continued to complain, Dr. Mosley referred him to Dr. T. W. Meriwether, an orthopedic specialist. The latter administered a complete orthopedic examination, which revealed no objective symptoms. This and other examinations were negative as to physical and clinical findings and on December 18, the employee was discharged as able to return to his work. Plaintiff was examined on January 16, 1963, by Dr. Al-fons R. Altenberg, an orthopedic specialist in Monroe, and by Doctors Heinz K. Faludi and Philip Bonn, specialists in neurosurgery, with offices in Shreveport. Dr. Altenberg concluded there were no residuals from the back injury and was of the opinion Dunn could return to work.
Doctors Faludi and Bonn each examined the plaintiff on one occasion and their findings were essentially the same. Dr. Faludi made his examination on March 4 and Dr. Bonn on May 27, 1963. Their neurological examinations were entirely negative but each reported that as of the date of their examinations the employee was still suffering from a mild back sprain which prevented him from doing heavy manual labor.
In addition to the medical evidence, plaintiff called certain lay witnesses consisting of members of his family and a friend, who testified as to their observations of his physical condition.
After a careful consideration of the evidence the trial judge found that plaintiff had failed to establish compensable disability, stating:
“The discussions of the medical testimony herein together with the unconvincing nature of the lay testimony convinces the Court that while the plaintiff may have a possibility of a residual injury, the facts and the evidence mitigate strongly against such possibility. Certainly it cannot be said that the plaintiff has borne the burden of proof and established his claim to a legal certainty by a reasonable preponderance of the "evidence.”
In reaching this conclusion obviously greater weight was accorded the testimony of the orthopedic specialists than to the testimony of the two neurosurgeons. The action of the trial court in this respect was entirely proper. The legal principle is well established to the effect that special knowledge and skill with regard to an injured back falls within the field of an orthopedic specialist, the testimony of whom, in a workmen’s compensation case involving such an injury, is entitled to greater weight than that of one who is not specialized in that field. Morris v. Supreme Bedding & Furniture Manufacturing Company, Inc., La.App., 126 So.2d 412 (2nd Cir.1961); Scott v. Roy O. Martin Lumber Company, La.App., 116 So.2d 726 (2nd Cir.1959); Edwards v. Aetna Casualty & Surety Com *922 pany, La.App., 108 So.2d 126 (1st Cir. 1959) ; Rider v. R. P. Farnsworth Company, La.App., 61 So.2d 204 (2nd Cir. 1952).
Although appellant argues that consideration should be accorded to the lay testimony as to his disability as presented in this case, this contention is without merit. Where there is no substantial conflict in medical testimony the Court will not resort to lay testimony tendered for the purpose of establishing disability. Ramsey v. Murphy, La.App., 77 So.2d 62 (2nd Cir. 1955); Carter v. Consolidated Underwriters, La. App., 62 So.2d 682 (2nd Cir. 1953).
It follows from the reasons above set forth that the trial court’s decision is correct and accordingly it will be affirmed at appellant’s costs.